## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| TRIDIA CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>ATEN TECHNOLOGY, INC. and<br>ATEN INTERNATIONAL CO., LTD.,<br><br>    Defendants. | CIVIL ACTION NO. |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Tridia Corporation ("Tridia") files this Complaint for Patent Infringement against Defendants Aten Technology, Inc. and Aten International Co., Ltd. (collectively "Defendants" or "Aten"), and alleges as follows:

### Nature of Action

1.  This is an action for patent infringement under the patent laws of the United States, Title 35, United States Code, seeking monetary damages and other relief against Aten due to its infringement of Tridia's United States Patent No. RE38,598 ("the '598 Patent").

## The Parties

2. Tridia is a corporation organized and existing under the laws of the State of Georgia, having a principal place of business at 1355 Terrell Mill Road, Marietta, Georgia.

3. On information and belief, Defendant Aten Technology, Inc. is a corporation organized and existing under the laws of the State of California, having a principal place of business at 19641 Da Vinci, Foothill Ranch, California 92610.

4. On information and belief, Defendant Aten International Co., Ltd. is a Taiwanese corporation with its principal place of business at 3f, 125, Ta Tung Rd., Sec. 2, 22183 New Taipei City 22183, Taiwan (R.O.C.).

## Jurisdiction and Venue

5. This Court has jurisdiction over the subject matter of this action based on 28 U.S.C. §§ 1331 and 1338(a) because this dispute is a civil action for patent infringement arising under the Patent Laws of the United States 35 U.S.C. § 1 *et. seq.*

6. Upon information and belief, each Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Georgia Long Arm Statute, due at least to each Defendant's substantial business in this forum, including: (i) at least a portion of the infringement alleged

herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals and businesses in Georgia and in this District.

7.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b).  Upon information and belief, each Defendant has transacted business in this District, and has committed and/or induced acts of patent infringement in this District.

## **Background**

8.  Tridia is based in Atlanta, Georgia and has been an innovator in the software business since 1987.  Tridia develops multi-platform connectivity software solutions, which enable companies to remotely access, manage, support and share computer applications in the UNIX/LINUX and Windows® environments.  Some of Tridia's 3,000 enterprise customers include Home Depot, Toshiba Corporation, and L.L. Bean, Inc.

9.  At the time of filing of the application for U.S. Patent No. 5,909,545 (the "'545 Patent"), the Internet was in its infancy.  While the Internet allowed the downloading of software to a computer, the software downloading process was complicated, requiring knowledge about hardware and software features, such that a consumer might not be able to install the software.

10. Moreover, while remote control programs existed at the time the '545 Patent was filed, one of the limitations of such programs was that they required a component of the remote control program to already be installed on both computers prior to any attempt to remotely control one of the computers.

11. Thus, what was needed was (a) a way to provide on-demand access to another computer without requiring the user to download and install a software program on the user's system and (b) a remote control program that did not require pre-installation of any components on each computer in order to operate.

12. The '545 Patent was filed in January 19, 1996. The '545 Patent, entitled "Method and System for On-Demand Downloading of Module to Enable Remote Control of an Application Program over a Network" was duly and legally issued by the United States Patent and Trademark Office on June 1, 1999. A true and correct copy of the '545 Patent is attached as Exhibit A.

13. The '545 Patent underwent a reissue proceeding before the United States Patent and Trademark Office which resulted in the issuance of United States Patent No. RE38,598 on September 21, 2004. A true and correct copy of the '598 Patent is attached as Exhibit B.

14. The '598 Patent was reexamined by the United States Patent and Trademark Office, Reexamination Request No. 90/010,092, and had its

patentability reaffirmed on May 18, 2010.  A true and correct copy of the Ex Parte Reexamination Certificate is attached as Exhibit C.

15.	The inventors of the '598 Patent, Vincent Frese II, W. Brian Blevins, and John P. Jarrett, were employees of Tridia at the time of its filing and remain employees today.

16.	Tridia is the owner and assignee of all right, title and interest in and to the '598 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

17.	The '598 Patent is presumed valid.

18.	The '598 Patent claims, *inter alia*, a method for allowing a first computer to establish on-demand remote control of a second computer. The claimed on-demand remote control features are often included in "KVM over IP" devices.

19.	A KVM over IP device provides "keyboard, video and mouse" functions that enable a user of that device to control multiple computers or servers in a network.  These devices often are used by IT engineers to manage and maintain an enterprise network, such as servers in a data center.  The ability of an IT engineer to have on demand remote control of the KVM over IP device from

another computer is an important function for a KVM over IP device that is demanded in the market.

20. The technology claimed by the '598 Patent is incorporated into Tridia's iTivity™ product which allows corporate clients on demand remote support of their various computer-based systems and devices.

21. The remote control software industry, including KVM over IP providers, have recognized the value of the '598 Patent and multiple Fortune 1000 companies are licensees of its claimed technology.

22. In its marketing materials, Aten touts some of the benefits of KVM over IP technology:

> Since the KN1108v / KN1116v uses TCP/IP for its communications protocol, it can be accessed via their IP addresses from anywhere on the LAN, WAN, or Internet – whether the connecting computer is located down the hall, down the street, or half-way around the world. Remote operators can log in via their browser or make use of stand-alone Windows or Java GUI applications.

*　　*　　*

> With its powerful features, the KVM Over the NET™ switch provides the fastest, most reliable, most cost effective way to remotely access and manage multiple server installations.

*See* ATEN KN1108v/KN1116v Marketing Materials, available at http://www.aten-usa.com/doc_data/pdf_dm/Altusen_KN1108v_KN1116v_IP_KVM_DS.pdf (accessed November 6, 2014).

23. The Aten Solutions Book for KVM Solutions ("Aten Solutions Book"), found on Aten's website at http://www.aten.com/data/epublication/data/solution-books/KVM-Solutions-Book-Issue1.pdf (accessed November 6, 2014) further provides:

> Many ATEN KVM solutions offer platform-independent, browser-based access via the Internet or LAN. Remote access and management of all servers allows fewer operators to manage a greater number of servers from anywhere; at any time.

24. On information and belief, Aten manufactures and/or sells a number of KVM over IP products, including but not limited to, the products in its KVM Over the NET™ line, such as the KN1108v / KN1116v products, and other KVM

switches, such as the KH1516 and CS1758 products (collectively, "the Accused Instrumentalities").

25. On information and belief, Aten has sold and/or provided the Accused Instrumentalities, and continues to sell and/or provide the Accused Instrumentalities, directly and/or indirectly, to third parties, including but not limited to customers, manufacturers, distributors, and/or resellers (collectively, "Downstream Parties").

26. Aten has had actual knowledge and notice of the '598 Patent, and of the patent's coverage of the Accused Instrumentalities, since at least as early as May 24, 2013 when Tridia contacted Aten about licensing the technology covered by the '598 Patent.

27. Aten has refused to license the '598 Patent and has continued to make, use and sell the Accused Instrumentalities knowing it infringes Tridia's patented technology.

## COUNT I
### Infringement of U.S. Patent No. RE38,598

28. Tridia repeats and realleges paragraphs 1-27 above as if set forth herein.

29. On information and belief, Aten has directly infringed and continues to infringe at least claims 31, 58, 60 and 63 of the '598 Patent within the meaning

of 35 U.S.C. § 271 by, without Tridia's authority, importing, making, using, selling, and/or offering to sell in the United States Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

30. On information and belief, Downstream Parties have been and are now infringing, including under 35 U.S.C.§ 271(a), at least claims 31, 58, 60 and 63 of the '598 Patent by making, using, selling, and/or offering to sell in the United States Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

31. On information and belief, Aten has, since at least May 24, 2013, been willfully blind to the fact that such acts by Downstream Parties of making, using, selling, and/or offering to sell Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities directly infringe the '598 Patent. Tridia has further notified Aten of such infringement through the filing of this complaint.

32. On information and belief, Aten through the sale and distribution of Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities is actively, intentionally, and/or knowingly inducing the direct infringement of at least claims 31, 58, 60 and 63 of the '598 Patent by Downstream Parties, including in this District and elsewhere in the United States.

33. On information and belief, Aten has encouraged and continues to actively encourage Downstream Parties to directly infringe the '598 Patent by at least (a) marketing Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities to Downstream Parties, (b) providing user guides and technical specifications to Downstream Parties that encourage the use of applications and methods of use for such Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities, including those marketed on Aten's website, http://www.aten.com/, (c) providing technical training to Downstream Parties, and (d) providing technical support and assistance to Downstream Parties during the life cycle of the Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

34. On information and belief, as a proximate result of Aten's inducement, the Downstream Parties directly infringed and continue to directly infringe at least claims 31, 58, 60 and 63 through the use of Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

35. On information and belief, Aten knew or should have known that their conduct would induce the Downstream Parties to remotely access a computer

or server in a manner that directly infringes at least claims 31, 58, 60 and 63 of the '598 Patent.

36. Thus, Aten has specifically intended to induce, and has induced, Downstream Parties to infringe at least claims 31, 58, 60 and 63 of the '598 Patent, and Aten has known of or been willfully blind to such infringement. Aten has advised, encouraged, and/or aided Downstream Parties to engage in direct infringement, including through its encouragement, advice, and assistance to Downstream Parties to use Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities.

37. Based on, among other things, the foregoing facts, Aten has induced, and continues to induce, infringement under 35 U.S.C. § 271(b) of at least claims 31, 58, 60 and 63 of the '598 Patent.

38. Further, Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities are imported, sold, and/or offered for sale in or into the United States by Aten and are especially made and adapted – and specifically intended by Aten – to be used to infringe at least claims 31, 58, 60 and 63 of the '598 Patent.

39. The Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities imported, sold, and/or offered for

sale in or into the United States by Aten are not staple articles or commodities of commerce and, due to their specific design, do not have substantial non-infringing uses.

40. Since at least May 24, 2013, Aten has been willfully blind to the fact that the Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities are especially made and adapted for – and are in fact used – by Aten and infringe at least claims 31, 58, 60 and 63 of the '598 Patent, and that the Aten products incorporating the technology covered by the '598 Patent including the Accused Instrumentalities are not staple articles or commodities of commerce suitable for substantial non-infringing use. Tridia has further notified Aten of the foregoing facts through the filing of this complaint.

41. Based on, among other things, the foregoing facts, Aten has contributorily infringed, and continues to contributorily infringe, at least claims 31, 58, 60 and 63 of the '598 Patent under 35 U.S.C. § 271(c).

42. Tridia has suffered damages as a result of the direct and indirect infringing activities of Aten and will continue to suffer damages as long as those infringing activities continue.

43. Tridia has been damaged and will continue to be damaged by Aten's infringing conduct and by Aten's conduct in contributing to and inducing infringement of the '598 Patent by others.

44. Tridia has been and will continue to be irreparably harmed by Aten's infringement of the '598 Patent unless and until such infringement is enjoined by this Court.

45. Aten has directly and indirectly infringed the '598 Patent willfully and deliberately. Aten had knowledge of the '598 Patent since at least May 24, 2013 and knew or should have known that there was an objectively high likelihood that its actions constituted infringement of one or more claims of the '598 Patent.

46. As a result of Aten's deliberate, intentional and willful infringement, Tridia is entitled to enhanced damages under 35 U.S.C. § 284.

47. Tridia has suffered damages as a result of Aten's infringement of the '598 Patent in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Tridia respectfully requests the following relief:

(a) A judgment that Aten has infringed the '598 Patent in violation of 35 U.S.C. § 271;

(b) A judgment that Aten has contributed to the infringement of the '598 Patent by others and/or induced the infringement of the '598 Patent by others in violation of 35 U.S.C. § 271;

(c) A permanent injunction be issued, pursuant to 35 U.S.C. § 271, restraining and enjoining Aten, its officers, agents, attorneys, and employees, and those acting in privity or concert with them, and their successors and assigns, from engaging in infringing conduct;

(d) A judgment that Aten's infringement of the '598 Patent has been willful under 35 U.S.C. § 284;

(e) A judgment against Aten that the present case is exceptional pursuant to 35 U.S.C. § 285;

(f) An award to Tridia of such monetary damages to which it is entitled to compensate it for Aten's infringement of the '598 Patent, with interest as fixed by the Court, such damages to be trebled in accordance with 35 U.S.C. § 284 as a consequence of Aten's willful infringement;

(g) An award to Tridia of its costs, expenses, and fees, including reasonable attorneys' fees, in this action;

(h) Such other relief as this Court may deem just, equitable, and proper.

## **DEMAND FOR JURY TRIAL**

Tridia hereby demands a trial by jury on all claims and issues so triable.

Dated this 7th day of November 2014.

>Respectfully submitted,
>
>s/ *Douglas D. Salyers*
>Douglas D. Salyers, Esq.
>Georgia Bar No. 623425
>TROUTMAN SANDERS LLP
>Bank of America Plaza
>600 Peachtree Street NE, Suite 5200
>Atlanta, GA 30308-2216
>Tel:  404.885.3208
>Fax:  404.885.3900
>Email: doug.salyers@troutmansanders.com
>
>*Attorney for Plaintiff Tridia Corporation*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing was prepared using Times New Roman 14-point font, and otherwise conforms to the requirements of Local Rule 5.1.

                          TROUTMAN SANDERS LLP

                          *s/ Douglas D. Salyers*